IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES A. MITCHEM, individually and on behalf of a class of similarly situated persons,<br><br>        Plaintiff,<br><br>    v.<br><br>ILLINOIS COLLECTION SERVICE, INC.,<br><br>        Defendant. | No. 09 C 7274<br><br>Judge Ronald A. Guzmán |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Mitchem, individually and on behalf of those similarly situated, has sued defendant Illinois Collection Service, Inc. ("ICS") for its alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1] Defendant has filed a Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion to dismiss the suit for lack of subject matter jurisdiction. Plaintiff has filed a Rule 23 motion for class certification. For the reasons set forth below, the Court denies the motions.

**Facts**

Plaintiff put his cellular telephone number on a patient information form he filled out in connection with medical treatment he received from Dr. Lee. (Def.'s Mem. Law Supp. Mot. Dismiss, Ex. 2, Mitchem Dep. 13.) Plaintiff believed that the information he provided would be used to collect the bill through the mail, not by telephone. (*Id.* 15.) He did not understand that, if

---

[1] The TCPA claims is the only one remaining in the suit. (*See* Def's. Resp. Mot. Class Cert. 3.)

he failed to pay the medical bill, Dr. Lee's office would give his number to a debt collector, which is exactly what happened. (*Id.*; Compl. ¶¶ 14-15.)

ICS is debt collector that uses an automatic dialing system in its collection efforts, which enables it to call debtors without having a person manually dial telephone numbers. (*Id.* ¶¶ 12, 16-17.) ICS typically obtains the debtors' telephone numbers from their doctors. (Mot. Class Cert., Ex. A, Gelb Dep. at 26-27.) If the doctor does not give ICS a number, or the number given is incorrect, ICS uses a skip tracing service to obtain the debtor's telephone number. (*Id.* at 21-22.)

On November 11, 2007, ICS used an automatic dialer to call plaintiff's cell phone and left a prerecorded voice message on his voice mail in an attempt to collect his debt to Dr. Lee. (Compl. ¶¶ 14, 18-19, 22-24, 27.) In total, ICS made approximately forty phone calls to plaintiff's cell phone. (Def.'s Mem. Law Supp. Mot. Dismiss, Ex. 2, Mitchem Dep. at 20.)

**Discussion**

**Motion to Dismiss**

There are two kinds of Rule 12(b)(1) motions: those that attack the sufficiency of the jurisdictional allegations and those that attack the factual basis for jurisdiction. Facial attacks are subject to the same standard as motions pursuant to Rule 12(b)(6) motions; that is, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2002). However, in factual attacks, like this one, the Court may consider affidavits and other evidence in

deciding the motion. *Id.* In either case, the burden of proving that jurisdiction exists rests with the plaintiff. *Id.*

Plaintiff alleges that ICS violated the TCPA by using an automatic dialer to call his and the putative class members' cellular telephones without their prior express consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii) ("It shall be unlawful for any person . . . to make any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone . . . ."). ICS contends that plaintiff does not have standing to assert this claim because he did not allege that he incurred individual charges for each call ICS made to his cell phone. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (identifying injury as a component of standing); (Def.'s Mem. Law Supp. Mot. Dismiss, Ex. 2, Mitchem Dep. at 23.) But it is reasonable to infer that plaintiff paid for service to the cell phone number ICS called, which is enough to confer standing. (*See* Pl.'s Resp. Mot. Dismiss, Ex. A, *Rivas v. Receivables Performance Mgmt., LLC*, No. 08-61312-CIV-LENARD/GARBER, slip op. at 8 (S.D. Fla. Sept. 1, 2009) (order granting in part defendant's motion for summary judgment) ("[T]he Court finds that Plaintiff was the one being charged for calls to his cellular phone and thus he has standing to assert a claim against Defendant for violations of the TCPA."); In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd 559, 562 (F.C.C. 2007) (noting that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used").

Even if plaintiff had not suffered damages, he would still have the requisite injury because he has alleged a violation of his rights under the TCPA. A plaintiff who sues to enforce statutory rights has constitutional standing if "[the] statutory provision on which the claim rests properly can

be understood as granting persons in the plaintiff's position a right to judicial relief." *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003) (quotation omitted). The TCPA does not require plaintiff to allege that he was charged for individual collection calls to state a claim. *See, e.g.*, *Lozano v. Twentieth Century Fox Film Corp.*, No. 09 C 6344, __ F. Supp. 2d __, 2010 WL 1197884, at *9 (N.D. Ill. Mar. 23, 2010) ("[T]he plain language of the TCPA does not require plaintiff to allege that he was charged for the relevant call at issue in order to state a claim pursuant to [section 227 of the TCPA]."); *Abbas v. Selling Source, LLC*, No. 09 C 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (same).

Nonetheless, defendant argues that plaintiff has no TCPA claim because he consented to receiving its calls by giving his cellular telephone number to Dr. Lee. *See* In re Rules, 23 FCC Rcd at 564 ("[T]he provision of a cell phone number to a creditor . . . reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."). Plaintiff says TCPA consent cannot be inferred from his provision of a cell phone number to his doctor because the number is protected health information that his doctor gratuitously disclosed to ICS in violation of under the Health Insurance Portability and Accountability Act ("HIPAA"). *See* 45 C.F.R. § 160.101 ("Protected health information means individually identifying health information. . . ."); *id.* § 164.514(b)(2)(D) (classifying telephone numbers as individually identifiable health information); *id.* § 164.514(d)(3)(i) (stating that health care providers should "limit the protected health information disclosed [for purposes of obtaining payment] to the amount reasonably necessary to achieve the purpose of the disclosure"). Whether that is true is a merits inquiry, not a question of jurisdiction. *See McCarter v. Ret. Plan for the Dist. Managers of the Am. Family Ins.*

*Group*, 540 F.3d 649, 650 (7th Cir. 2008) ("[T]he shortcomings of a legal theory differ from a lack of subject-matter jurisdiction.").

Defendant argues that the issues of standing and claim viability should be addressed together, citing the district court decision in *McCarter* as support. The plaintiffs in that case alleged that their pension plan violated ERISA because it was structured to encourage them to choose lump sum distribution. *McCarter v. Retirement Plan for Dist. Managers of Am. Family Ins. Group*, No. 3:07-cv-00206-bbc, 2007 WL 4333979, at *6-8 (W.D. Wis. Nov. 16, 2007). Though plaintiffs had not been financially harmed by the lump-sum method, they argued that it violated their rights under the revenue regulations governing ERISA plans. *Id.* at *6-7. The court, believing that "the issue of standing rises or falls on the merits of [plaintiffs'] claim," addressed them together and concluded that plaintiffs did not have standing or a viable claim. *Id.* at *6-8. On appeal, however, the Seventh Circuit rejected that approach:

> "[T]he district court . . . dismiss[ed] the suit for want of standing. . . . But if the Employee Retirement Income Security Act (ERISA) entitles [plaintiffs] to revoke their elections yet keep the cash, it is not appropriate to dismiss the suit for lack of a case or controversy. . . . The injury [plaintiffs] assert – that monthly income at retirement age is diminished if participants are stampeded into taking cash, which then burns holes in their pockets – can be traced to the plans' terms and can be redressed by a judgment in plaintiffs' favor. No more is required for standing.

*McCarter*, 540 F.3d at 650. Thus, *McCarter* does not support defendant's claim that standing and viability should be addressed simultaneously.

Nor does *Walters v. Edgar*, 163 F.3d 430 (7th Cir. 1998), another case on which defendant relies. In that case, the Seventh Circuit said the two issues were "inseparable," but it did so because of the kind of claim the plaintiffs asserted:

> *Lewis v. Casey*, . . . holds that denial of access to the courts is not actionable unless the plaintiff has suffered an injury over and above the denial. . . .

5

> . . . .
>
> It is not enough for standing, however, for the plaintiffs to be able to point to claims that they might have pressed to victory had it not been for the restrictions that the defendants placed on their access to the courts. They must also show that their claims had been . . . blocked by restrictions that violate the Constitution. We thus are dealing with a class of cases in which the issue of standing and the merits of the plaintiffs' claims are inseparable.

*Id.* at 434-35. Unlike in *Walters*, the issues of injury, *i.e.*, whether plaintiff had to absorb the cost of defendant's allegedly unlawful conduct, and viability, *i.e.*, whether defendant's conduct actually violated the TCPA, are distinct. Thus, *Walters* has no application to this case.

In short, there is no reason in this case to conflate the issues of standing and viability. Though plaintiff's TCPA claim may ultimately fail, the Court concludes that he has constitutional standing to assert it. Defendant's motion to dismiss for lack of subject matter jurisdiction is, therefore, denied.

**Class Certification**[2]

Plaintiff seeks certification of a class of:

All persons with a cellular telephone number corresponding to the (312) area code where Illinois Collection Service, Inc., used and [sic] automatic telephone dialing system or an artificial prerecorded voice in an attempt to collect a medical debt during a time period beginning on November 19, 2005 and ending on December 9, 2009.

---

[2]Defendant argues that a class should not be certified because plaintiff lacks standing or does not have a viable claim. The Court has rejected the former argument, and the latter is not an appropriate response to a class certification motion. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (stating that the issue for class certification is whether the asserted class satisfies Rule 23 not whether plaintiff's claim has merit).

6

(Pl.'s Mot. Class Certification 1.) To be certified, the class must meet all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b). *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009).

The parties do not dispute, and the Court finds, that the proposed class, which has at least 325 members, meets the numerosity requirement of Rule 23(a)(1). *See Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000) ("While there is no threshold or magic number . . . , a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes."); (Pl's. Mot. Class Cert., Ex. B, Stipulation ¶ 9). The Court also finds that plaintiff and his counsel satisfy the adequacy requirement. *See Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993) ("*RCPA*") ("[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." (quotation omitted)).

The remaining requirements of Rule 23(a) are commonality and typicality. *See* Fed. R. Civ. P. 23(a)(2), (3). "A plaintiff's claim is typical is if arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *RCPA*, 7 F.3d at 597 (quotations omitted). "[C]ommonality and typicality are generally met where . . . a defendant engages in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008).

Plaintiff alleges that defendant engaged in the same conduct toward him and the putative class members, *i.e.*, called their area code 312 cell phone numbers using an automatic dialer and/or a pre-recorded message in an attempt to collect a medical debt. Plaintiff identifies the common

questions of law and fact in this case as whether: (1) HIPAA vitiates a debtor's prior express consent when the health care creditor gives the debtor's telephone number to 'a business associate,' like defendant; (2) defendant violated the TCPA by calling debtors' cell phones using an automatic dialer or prerecorded message when they did not give prior express consent directly to defendant; and (3) defendant acted willfully, entitling the class members to treble damages. (Pl's. Mot. Class Certification 3.)

Defendant argues that commonality and typicality are lacking because the class includes debtors: (1) who have no TCPA claim, even under plaintiff's theory, because they gave their cell phone numbers directly to defendant; (2) have no TCPA claim under any theory because defendant did not call their cell phones in its attempt to collect their debts; and (3) whose claims differ from plaintiff's because defendant obtained their cell phone numbers from someone other than a health care provider. Plaintiff contends that the first group of debtors is nonexistent, the second group is not part of the class if the definition is properly read and the third group has claims like his because HIPAA vitiates consent whenever a health care provider gives a debtor's cell phone number to any third party.

It is not clear whether plaintiff's first contention is accurate because the record contains no evidence on the issue. Plaintiff's second contention ignores the ambiguity inherent in the class definition. (*See id.* 1 (defining class, in part, as people with a 312 cell phone number "*where* Illinois Collection Service, Inc., used an automatic telephone dialing system or an artificial prerecorded voice in an attempt to collect a medical debt." (emphasis added)).) Perhaps the most reasonable interpretation of the definition is that the class includes only debtors whose cell phones defendant actually called, but that is not the only interpretation the language supports. Plaintiff's third

8

contention is based on the assumption that any non-medical third party who gave defendant a class member's cell phone number received that number from the debtor's medical provider, a premise for which no support has been offered. Thus, the Court agrees with defendant that the class definition is too broad.

These problems can likely be cured, however, by limiting the class to debtors whose cell phones defendant actually called and whose cell phone numbers defendant, or the skip tracers with whom it works, obtained from the debtors' health care providers. Defendant argues that such an amendment would not, as a practical matter, eliminate the need for individual consent determinations because it cannot run a search on its database that identifies the source from which a debtor's cell phone number was obtained. Thus, it says, all medical debtors whose 312 area code cell phone numbers it called using an automatic dialer or a pre-recorded message would be notified of the suit and the determining whether each consented would dominate the case. *See* Fed. R. Civ. P. 23(b)(3) (stating that "questions of law or fact common to class members [must] predominate" over individual questions for a class to be certified).

That argument might have some force if there were no records from which defendant could compile an appropriate debtor list. But defendant admits such records exist, albeit not in digital form. (Def.'s Resp. Mot. Certify Class 9-10 ("To determine the source of all phone numbers that ICS called, [it] would have to manually review the collection notes for that debtor and the material provided by the creditor for that debtor.").) Because defendant is capable of compiling a list of debtors who did not, under plaintiff's theory, consent to its calls, an appropriately tailored class definition could make consent a class-wide, not an individual, issue.

In sum, the proposed class as currently defined does not meet the commonality, typicality and predominance requirements of Rule 23. But, because the defects may be curable, the Court gives plaintiff leave to amend the class definition to do so.

### Conclusion

For the reasons set forth above, defendant's motion to dismiss for lack of subject matter jurisdiction [doc. no. 51] is denied and plaintiff's motion for class certification [doc. no. 48] is denied without prejudice. Plaintiff has fourteen days from the date of this Memorandum Opinion and Order to amend the proposed class definition and file a motion to certify the class as amended.

**SO ORDERED.**                                              **ENTERED: 7/29/10**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**