**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JAMES A. MITCHEM, individually and on behalf of a class of similarly situated persons,** ) ) ) ) | |
| ) | No. 09 C 7274 |
| **Plaintiff,** ) ) | **Judge Ronald A. Guzmán** |
| **v.** ) ) | |
| **ILLINOIS COLLECTION SERVICE, INC.,** ) ) ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

James Mitchem has sued Illinois Collection Service, Inc. ("ICS") for its alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The case is before the Court on plaintiff's amended motion for class certification.

**Discussion**

After the Court denied his first motion for class certification, and in response to defendant's objections to the amended definition he offered in his opening brief, plaintiff further amended the definition and now seeks to certify a class of:

> All persons called by Illinois Collection Service, Inc., using an automatic telephone dialing system with a prerecorded voice message that left a prerecorded message in the form received by Plaintiff, where the call was placed to the person's cellular telephone number corresponding to the (312) area code from November 19, 2005, though December 9, 2009, in an attempt to collect a medical debt, and where Illinois Collection Service, Inc.'s records show that it obtained the person's cellular telephone number from that person's health care provider. Excluded from the class are persons who Defendant's records show that they gave consent directly to Defendant to call their cellular telephone number corresponding to the (312) area

> code prior to Defendant first placing a call with its automatic telephone dialing system and left a prerecorded voice message in the form received by Plaintiff.

(Pl.'s Reply Supp. Am. Mot. Class Certification 2.) Defendant argues that this class should not be certified because: (1) class members, like plaintiff, who gave their cell numbers to a medical creditor do not have viable TCPA claims because by doing so they consented to receiving collection calls on that number; (2) the individual issue of consent predominates over any common issues; (3) the amended definition may include people who did not give their cell phone numbers to their medical creditors; and (4) identifying the members of the putative class would be unduly burdensome and costly.

Plaintiff's amendment of the definition to include only people whose cell numbers were obtained from a health care provider moots defendant's third objection. Moreover, the Court rejects ICS' first and second objections for the same reasons it did so when ICS offered them in response to the first certification motion. (*See* 7/29/10 Mem. Op. & Order at 4-7.)

That leaves defendant's fourth objection, that the class cannot reasonably be identified. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (stating that certification is appropriate only if there "is, indeed, [an] identifiable . . . class"). "A class is identifiable if its members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct." *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, No. 08 C 2259, 2010 WL 4513663, at *7 (N.D. Ill. Nov. 2, 2010) (quotation omitted). Certification should be denied, however, if there is "simply no reasonable way of identifying potential . . . members." *Id.* (quotation omitted).

The proposed class, people whom ICS called with an auto-dialer during a four-year period on an area code (312) cell phone number it obtained from a medical provider, is defined by objective criteria and with reference to ICS' alleged conduct. Based on the declaration of its employee

Randall Gelb, ICS argues that it would be unduly burdensome to identify the class members from its records. (*See* Def.'s Resp. Opp'n Pl.'s Am. Mot. Class Certification, Gelb Decl.) According to Gelb, since 1998 ICS has kept a computerized database that includes records of auto-dialed calls. (*Id.* ¶¶ 2, 5.) These records can contain up to three phone numbers for each debtor, a "place of employment" number, a "can be reached" number and a "responsible party" number, and identify the person from whom ICS obtained the numbers. (*Id.* ¶ 4.) ICS cannot, however, generate from its database a list of numbers sorted by the source from whom they were obtained. (*Id.* ¶ 11.) Thus, ICS would have to review its records for all cell phone numbers it auto-dialed within the class period to determine whether each was obtained from a medical provider. (*Id.* ¶¶ 11-12.)

As of June 2010, ICS' database contained about 802,888 phone numbers with a (312) area code in the "place of employment," "can be reached" and "responsible party" fields, about 15.91%, or 127,777, of which were assigned to cell phones. (*Id.* ¶ 7; Def.'s Resp. Opp'n Pl.'s Am. Mot. Class Certification, Schaeffer Decl. ¶¶ 2-4.) ICS assumes that it auto-dialed 5/12, or about 53,240, of these cell phone numbers during the class period and estimates that it would take, at a rate of three minutes per number, about 2,662 hours and cost about $43,890.00 to determine the source of each. (Gelb Decl. ¶¶ 9, 12-17.)

ICS does not explain, however: (1) why it based this estimate on the universe of numbers it accumulated in its database from 1998 and 2010, rather than those it called during the class period; (2) why it used five as the dividend in the fraction, when there are only four years in the 2005-09 class period; (3) whether a phone number that its records associate with multiple debts, but only one debtor, is counted more than once in the 802,888 figure; (4) whether a phone number that appears in more than one field for any debtor is counted more than once; (5) whether it can or did eliminate

3

from the pool people indebted to non-healthcare creditors; or (6) why it assumed that the number of cell phone calls it made remained constant over time. (Gelb Decl. ¶¶ 3-4, 7); *see* http://www.icscollection.com/services.htm (stating that ICS collects debts for non-healthcare businesses); http://www.ctia.org/media/industry_info/index.cfm/AID/10323 (stating that the number of U.S. cell phone subscribers has more than tripled in the last ten years).

Even if the estimate were flawless, ICS would still face a hurdle it does not even address, the class estimate to which it previously stipulated. In the stipulation, ICS estimated that there about 332 members of the TCPA class. (*See* Pl.'s Mot. Class Certification, Ex. B, Stip. ¶¶ 2-7 (stating that ICS identified eighty-three people who met the class definition during one year of the class period).) "[O]nce made, a stipulation is binding unless relief from [it is] necessary to prevent a manifest injustice or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir. 1989) (quotation omitted).

Presumably, ICS thinks Gelb's declaration shows that the stipulation is based on a faulty view of the facts. But, given Gelb's failure to explain adequately the basis for the new estimate and why it is 100 times larger than the one in the stipulation, the Court does not find Gelb's declaration to be a sufficient basis for disregarding the stipulation. Therefore, having previously held that the material aspects of the class definition plaintiff now offers satisfy the other requirements of Rule 23, the Court overrules ICS' objections and grants plaintiff's amended motion for class certification.

## Conclusion

For the reasons set forth above, the Court grants plaintiff's amended motion for class certification [doc. no. 64] and certifies the following class:

> All persons called by Illinois Collection Service, Inc., using an automatic telephone dialing system with a prerecorded voice message that left a prerecorded message in the form received by Plaintiff, where the call was placed to the person's cellular telephone number corresponding to the (312) area code from November 19, 2005 though December 9, 2009, in an attempt to collect a medical debt, and where Illinois Collection Service, Inc.'s records show that it obtained the person's cellular telephone number from that person's health care provider. Excluded from the class are persons who Defendant's records show that they gave consent directly to Defendant to call their cellular telephone number corresponding to the (312) area code prior to Defendant first placing a call with its automatic telephone dialing system and left a prerecorded voice message in the form received by Plaintiff.

**SO ORDERED.**                                        **ENTERED:**

**January 3, 2011**

*/s/ Ronald A. Guzman*
_____
**HON. RONALD A. GUZMAN**
**United States District Judge**