IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES A. MITCHEM, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>ILLINOIS COLLECTION SERVICE, INC.,<br><br>    Defendant. | Case No.: 09 C 7274<br><br>Judge Guzmán<br><br>Magistrate Judge Mason |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF AND CLASS**

Defendant ILLINOIS COLLECTION SERVICE, INC. ("ICS"), respectfully submits this Memorandum of Law in Support of Its Motion for Summary Judgment against Plaintiff and the Class on the TCPA Claim asserted in Count II of the Complaint.[1]

## I.  INTRODUCTION

Because plaintiff and the Class members consented to receive collection calls from ICS, the calls complied with the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), as a matter of law, and summary judgment on the TCPA should be entered in ICS's favor. Plaintiff alleges that ICS violated the TCPA, § 227(b)(1)(A)(iii), by using an automatic telephone dialing system ("ATDS") and/or a prerecorded message to call the wireless phone numbers of the plaintiff and the Class members. ICS made the allegedly prohibited calls while trying to collect debts owed to medical creditors who had given ICS the phone numbers it called.

---

[1] Plaintiff and defendant reached an agreement in principle to settle the claim asserted in Count I under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* That claim is not addressed in this motion.

Auto-dialed and prerecorded message calls (collectively, "auto-dialed calls") made to a cell phone violate the TCPA only if they are made without the called party's consent. § 227(b)(1)(A). If a person gives his cell phone number to a creditor in connection with a debt, he consents to receive auto-dialed calls at that number from the creditor's debt collector. The Federal Communications Commission ("FCC") has ruled that "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party."

Mitchem admits that he gave his creditor the phone number that ICS called, and therefore Mitchem consented to receive calls from ICS at that number. Hence, even if ICS called Mitchem's cell phone using an ATDS or prerecorded message, ICS's calls complied with the TCPA as a matter of law.

This is also true of the calls made to the Cass members. The Court found that the Class members' claims are typical of the plaintiff's claim in that ICS placed collection calls to them at a phone number which each Class member had given to the creditor, as evidenced by the fact that the creditor gave each such number to ICS. Since plaintiff and the class members consented to receive collection calls from ICS by releasing their numbers to their creditors, the calls complied with the TCPA, and summary judgment should be entered in ICS's favor.

## II.  FACTS

Mitchem incurred a debt to Midwest Orthopaedics at Rush LLC ("Midwest") for health care services that Midwest performed. (Statement of Material Facts in Support of Motion for Summary Judgment Against Class ("SMF") ¶ 5). In connection with the debt, Mitchem admittedly provided Midwest with a phone number, 312-735-4***, which he contends is assigned to his cell phone. (SMF ¶ 5-6, 8). When Mitchem failed to pay the money owed, Midwest asked ICS to collect the debt and provided ICS with the contact information Mitchem

2

had supplied, including his phone number. (SMF ¶ 6). ICS tried to collect Mitchem's debt by calling him at the number it received from Midwest. ICS did not call Mitchem at any other number. (SMF ¶ 7). Mitchem alleges that on November 11, 2009 ICS left a prerecorded message at that number. (Complaint, Docket Entry ("DE") #1 ¶ 18-19, 22-23). Mitchem contends that ICS's calls violated the TCPA because they were made using a prerecorded message and/or an ATDS. (DE #1 ¶ 57-58, 64-66).

### III. CLASS CERTIFICATION

In his original motion for class certification, plaintiff defined the class as including anyone who had a cell phone with a 312-area code number that ICS made an auto-dialed call to, regardless of whether the debtor gave the number to ICS or the creditor. (DE #49 p. 1). The Court denied the motion because the definition was overbroad, and it failed to meet the requirements of commonality and typicality. The Court found that the class could have included: (1) people who had no TCPA claims because they gave ICS their cell phone numbers; (2) people who did not have TCPA claims because they were not contacted on their cell phones; (3) people whose cell phone numbers were provided to ICS by someone other than their medical creditor; and (4) people who were like plaintiff in that their creditors gave ICS the number that ICS called. *Mitchem v. Illinois Collection Service, Inc.,* 2010 WL 3003990, *4 (N.D. Ill. 2010) (DE # 62).

Plaintiff filed an amended motion for class certification. In his reply brief (DE # 68) in support of the motion, plaintiff asked the Court to certify a class defined as:

> All persons called by Illinois Collection Service, Inc., using an automatic telephone dialing system with a prerecorded voice message that left a prerecorded message in the form received by Plaintiff, where the call was placed to the person's cellular telephone number corresponding to the (312) area code from November 19, 2005 though December 9, 2009, in an attempt to collect a medical debt, and where Illinois Collection Service, Inc.'s records show that it obtained the person's cellular telephone number from that person's health care provider. Excluded from the class are persons who Defendant's records show that they gave consent directly to Defendant to call their cellular telephone number

3

corresponding to the (312) area code prior to Defendant first placing a call with its automatic telephone dialing system and left a prerecorded voice message in the form received by Plaintiff. (DE #68 p. 2).

In an order dated January 3, 2011, the Court concluded that plaintiff's TCPA claim was typical of the claims of the Class members under this definition, and that the other prerequisites to class certification were met.[2] The Court accordingly certified the Class based on the definition set forth above.

### IV.     ARGUMENT

**A.     As a matter of law, plaintiff and the Class members consented to receive ICS's collection calls, and the calls therefore comply with the TCPA.**

Mitchem alleges that "Defendant made a telephone call to plaintiff's cell phone using an automatic telephone dialing service and/or an artificial or prerecorded voice, as proscribed by the TCPA." (Cplt. ¶ 57-58). The TCPA prohibits calls to a cell phone only if they are made without the called party's consent. § 227(b)(1) makes it unlawful for a person:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> …
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

The prohibition does not apply if the called party consented to receive auto-dialed and prerecorded message calls on his cell phone. The FCC has clarified what constitutes "express

---

[2] The Court found that, "Plaintiff's amendment of the definition to include only people whose cell numbers were obtained from a health care provider moots defendant's third objection," which was that "the amended definition may include people who did not give their cell phone numbers to their medical creditors." (DE # 80 p. 2).

4

consent" under the statute pursuant to its authority to create rules and regulations implementing the TCPA. *See* 47 U.S.C. § 227(b)(2). The FCC issued a declaratory order which states that:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.
>
> Calls placed by a third party collector on behalf of that creditor [to whom prior express consent was provided] are treated as if the creditor itself placed the call.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9-10.

> In a prior ruling, the FCC determined that:
>
> persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

*In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8769 ¶ 31 (1992).

Under these regulations, when a debtor provides his cell phone number to a creditor, the debtor consents to receive auto-dialed and prerecorded message calls on his cell phone, and the creditor's debt collector may call the cell phone number using an ATDS or prerecorded message without violating the TCPA. Mitchem gave Midwest the phone number that ICS called, and Midwest in turn gave the number to ICS. (SMF ¶¶ 5-7). Even if the number ICS called Mitchem at was assigned to his cell phone, the calls complied with the TCPA, § 227(b)(1)(A)(iii) because Mitchem consented to receive the calls. As a result, ICS did not violate the TCPA, and summary judgment must be entered in ICS's favor on Count II.

5

A similar fact pattern was presented by *Greene v. DirecTV, Inc.*, 2010 WL 4628734, *3 (N.D. Ill. 2010) (Kocoras, J.). The plaintiff there put a fraud alert message in her credit reports which stated that potential creditors should verify her identity by calling her cell phone number before they opened credit using her personal information. The defendants called the plaintiff's cell phone and played a prerecorded message asking whether she had ordered a satellite television account with DirecTV. The plaintiff sued, alleging that the prerecorded message violated the TCPA. The court entered summary judgment for defendants. The plaintiff had consented to be contacted by potential creditors on her cell phone number when she instructed potential creditors to verify her identity by calling that number. Likewise, in this case, Mitchem's TCPA claim fails because he consented to receive ICS's calls by releasing his number to his creditor.

As goes plaintiff's individual claim, so go the claims of the Class members. The order on the amended motion for class certification (DE #80 p. 2) provides that the Class members' claims are typical of the plaintiff's claim. ICS called the plaintiff and Class members at phone numbers that were given to ICS by the creditors, which establishes that the Class members gave their numbers to the creditors, and thereby consented to be called at those number concerning their debts. Since plaintiff and the Class members consented to receive the collection calls that ICS made, the calls complied with the TCPA, and summary judgment on the TCPA claim should be entered in ICS's favor.

**B.    HIPAA does not vitiate the consent that was given by plaintiff and the Class members to receive ICS's collection calls.**

Mitchem makes a tortuous and flawed argument based on HIPAA[3] in an attempt to avoid the conclusion that consent defeats the claims that he and the Class members assert. His HIPAA argument runs as follows: (1) When a patient gives his phone number to a health care provider, HIPAA prohibits the provider from releasing the phone number to a debt collector; and (2) therefore, an individual who gives his phone number to a health care provider has not consented, for purposes of the TCPA, to receive calls from the provider's debt collector.

HIPAA allows a "covered entity"[4] like Midwest to disclose a patient's protected health information ("PHI") without his consent for purposes of payment and collections. 45 C.F.R. § 164.506(c)(1). However, Mitchem contends that Midwest could not release his phone number to ICS because the phone number allegedly exceeded "the minimum necessary" standard, which states that, when a covered entity uses or discloses "protected health information" ("PHI"), the "covered entity must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 45 C.F.R. § 164.502(b)(1). (DE #1 ¶ 33-34, 36). Mitchem argues that the "minimum necessary" for ICS to collect his debt was his name and address, since federal law required ICS to send him a written notice of his right to dispute the debt, but federal law did not require ICS to contact him on his phone at all. (DE #1 ¶ 33 citing FDCPA, 15 U.S.C. § 1692g(a)(1)-(5)). Mitchem concludes that, because HIPAA barred Midwest from releasing his number to ICS, he never consented to receive ICS's calls for purposes of the TCPA, despite the clear language of the FCC regulation.

---

[3]    The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), §§ 261-264, Public Law 104-191, 110 Stat. 2033-2034 (codified at 42 U.S.C. §§ 1320d - 1320d-8).
[4]    The term "covered entity" means health care providers. 45 C.F.R. § 160.103.

130051974v1 0907481 07791

Mitchem's argument cannot be taken seriously. Whether a consumer has consented to receive calls for purposes of the TCPA is governed not by HIPAA but by the TCPA and the FCC's regulations. Therefore, Mitchem consented to receive ICS's calls even if *arguendo* HIPAA prohibited Midwest from releasing the number to ICS. Further, the premise of Mitchem's argument is incorrect as HIPAA permitted Midwest to release his phone number to ICS.

### 1. Whether a debtor has consented to be contacted on his cell phone for purposes of the TCPA is governed by the TCPA, not HIPAA.

The TCPA controls the question of whether Mitchem and the Class members consented to receive phone calls from ICS for purposes of the TCPA's prohibition against certain auto-dialed calls. The question of consent under the TCPA does not depend on whether HIPAA allows medical creditors to release the Class members' phone numbers to ICS. The two statutes are administered by different agencies. The TCPA is administered by the FCC.[5] HIPAA is administered by the Department of Health and Human Services ("DHHS").[6]

The statutes do not refer to each other, and nothing in the TCPA suggests that the question of consent is controlled by HIPAA. The goals of the two statutes and the fields of activity that they regulate are completely unrelated. Congress enacted the TCPA to curb unsolicited telephone advertisements and to "regulate[] the use of automated telephone equipment." FCC No. 07-232, 2008 WL 65485, ¶ 2. Congress enacted HIPAA to provide for "the establishment of standards and requirements for the electronic transmission of certain health information." *Citizens for Health v. Leavitt,* 428 F.3d 167, 172 (3d Cir. 2005) (quoting § 261 of

---

[5] 47 U.S.C. § 227(b)(2) requires the "Commission" to prescribe regulations for implementing the TCPA's prohibitions in § 227(b). The term "Commission" is defined as the FCC. 47 U.S.C. § 154(a).

[6] HIPAA was enacted as §§ 261-264 of Public Law 104-191 and is codified at 42 U.S.C. §§ 1320d - 1320d-8. 45 C.F.R. § 164.102; 67 FR 14776. 42 U.S.C. § 1320d-1(d) provides that the "Secretary shall establish specifications for implementing each of the standards adopted under" HIPAA. "Secretary" is defined as the Secretary of the DHHS. 42 U.S.C. § 1320(a)(6).

Pub.L. 104-191, 110 Stat. 1936). HIPAA's implementing regulations allow a covered entity to use and disclose health information without patient consent for "treatment, payment, and health care operations"—so-called routine uses—and otherwise prohibit covered entities from releasing PHI without the individual's consent. 428 F.3d at 173-74 citing § 164.506; § 164.508(a). HIPAA has nothing to do with telemarketers or auto-dialed calls made to cell phones. The TCPA has nothing to do with the disclosure of health information received by health care providers.

Because HIPAA and the TCPA are administered by different agencies, they regulate different fields of activity, and they do not refer to each other, the question of whether a debtor consented to receive collection calls under the TCPA is plainly unrelated to the question of whether HIPAA allows a health care provider to release the debtor's phone number. Hence, even if for the sake of argument HIPAA barred medical creditors from disclosing the Class members' phone numbers to ICS, plaintiff and the Class members still consented to receive ICS's calls under the TCPA. However, as explained below, HIPAA permitted the creditors to disclose the numbers to ICS, so even if the premise of Mitchem's argument is true, he and the Class members still consented to receive ICS's calls.

### 2. HIPAA permitted Midwest and the other creditors to give ICS patients' phone numbers for the purpose of collecting their debts.

For two reasons, HIPAA allowed the medical creditors to release their patients' phone numbers to ICS, and therefore they consented to receive ICS's calls, even if for the sake of argument HIPAA had some bearing on the consent analysis under the TCPA. First, HIPAA only regulates a covered entity's use and disclosure of PHI (protected health information), 45 C.F.R. §§ 164.502(a); 506(a); 508(a). A patient's phone number is not PHI. HIPAA defines PHI as a subset of "individually identifiable health information." The latter phrase in turn is defined as health information that:

9

(1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and

(2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and

(i) That identifies the individual; or

(ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual. *See* 45 C.F.R. § 160.103, definitions of *Individually Identifiable Health Information* and *Protected Health Information*.

A phone number does not meet element (2) of the definition of "individually identifiable health information" because it does not relate to "the physical or mental health or condition" of a patient; "the provision of health care to" a patient; or "the past, present, or future payment for the provision of health care to" a patient. Because a phone number is not PHI, HIPAA does not restrict a covered entity's disclosure of a phone number. Thus, HIPAA did not proscribe Midwest's disclosure of the number to ICS, and HIPAA does not vitiate the consent given by Mitchem and the Class members.

More important, even if a phone number was PHI, HIPAA would permit medical creditors to disclose the number to a debt collector without regard to whether the patient consented to the release of the number. HIPAA allows a covered entity to use and disclose PHI *without patient consent* for "treatment, payment, and health care operations" – so-called routine uses. *Citizens for Health,* 428 at 173-74 citing § 164.506(a). "Payment" under HIPAA is defined as "activities undertaken by … a health care provider … to obtain … reimbursement for the provision of health care;" the term includes "collection activities." 45 C.F.R. § 164.501, Definition of *Payment.* Since HIPAA provides that the health care provider can disclose PHI for purposes of its payment and collection activities, HIPAA obviously could not have prohibited Midwest and the other creditors from disclosing the debtors' numbers to ICS. Mitchem's reliance

130051974v1 0907481 07791

on HIPAA would be unavailing even if HIPAA related to the consent analysis under the TCPA and even if a phone number amounted to PHI.

Mitchem notes that, when disclosing PHI as part of its payment operations, a covered entity must "make reasonable efforts to limit [PHI] to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." § 164.502(b). He suggests that disclosure of a phone number is beyond the "minimum necessary to accomplish" the collection of a debt because the only information a collector needs to comply with the FDCPA (which regulates third party debt collectors), 15 U.S.C. § 1692g, is the debtor's name and address. (Cplt. ¶ 33-34). Mitchem offers no reasoning or authority to support his assumption that the "minimum necessary to accomplish [an] intended purpose" under HIPAA is defined in terms of the information that is required to comply with the FDCPA. His assumption in fact is absurd. The FDCPA and HIPAA are distinct bodies of law, they are administered by different agencies, and they occupy different titles of the U.S. Code. HIPAA itself, not the FDCPA, defines what the "minimum necessary to accomplish the intended purpose of the use [or] disclosure" is.

The HIPAA regulations refer to the "minimum necessary" as the "amount [of PHI that is] reasonably necessary to achieve the intended purpose of disclosure." § 164.514(d)(3)(i). The minimum necessary standard provides that a "covered entity must make reasonable efforts to limit [PHI] to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." § 164.502(b)(1). It is obvious that a debtor's phone number is necessary for a debt collector to collect the debt. (*See* SMF ¶ 9). The argument that the disclosure of the phone number exceeds the minimum necessary to collect a debt borders on frivolous.

In sum, HIPAA does not control whether a debtor has consented for purposes of the TCPA to receive calls on his cell phone from a health care provider's debt collector. Even if

130051974v1 0907481 07791

HIPAA applied, it would not matter because HIPAA allows a health care provider to disclose an individual's phone number to a debt collector pursuant to its payment and collection operations.

## IV.  CONCLUSION

For all the above reasons, Defendant, ILLINOIS COLLECTION SERVICE, INC. respectfully requests this Honorable Court enter summary judgment on the TCPA claim in favor of defendant, and against plaintiff and the members of the Class that was certified in the order of January 3, 2011.

| | |
|---|---|
| David M. Schultz<br>Peter E. Pederson<br>Avanti Bakane<br>HINSHAW & CULBERTSON LLP<br>222 N. LaSalle Street, Suite 300<br>Chicago, Illinois  60601<br>(312) 704-3000<br>Fax:  (312) 704-3001 | Respectfully submitted<br><br>ILLINOIS COLLECTION SERVICE, INC.<br><br><br>By:   /s/ Peter E. Pederson<br>        One of its Attorneys |

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on January 13, 2011, he served this document by filing it with the Court's CM/ECF system, which will make copies of the documents available to all counsel of record.

/s/ Peter E. Pederson

## **Service List**

Curtis C. Warner, Esq. <cwarner@warnerlawllc.com>
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, IL 60601