**IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES A. MITCHEM, individually and on behalf of a class of similarly situated persons, | ) ) ) | |
| | ) | 09 C 7274 |
| Plaintiff, | ) ) | Judge Guzmán |
| v. | ) ) | |
| ILLINOIS COLLECTION SERVICE, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS
CROSS-MOTION FOR SUMMARY JUDGMENT
AND
RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

James A. Mitchem ("Plaintiff"), individually and on behalf of the certified class, requests this Honorable Court for the reasons below to grant Plaintiff's Cross-Motion for Summary Judgment and to deny Defendant Illinois Collection Service, Inc.'s, ("Defendant"), Motion for Summary Judgment on Count II, violation of the Telephone Consumer Protection Act, 47 U.S.C § 227, ("TCPA").

**INTRODUCTION**

Defendant, a medical debt collector that is also a "business associate" under the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 100 Stat. 1936 (Aug. 21, 1996), codified at various code sections, ("HIPAA"), exceeded the Act's "minimum necessary" usage restrictions on Protected Health Information ("PHI") by its automated dialer calling Plaintiff's and the class' cellular telephone numbers in an attempt to collect a debt. The HIPAA's "minimum necessary" restrictions are statutory "instructions to the contrary" under the Federal Communication Commission's ("FCC") January 4, 2008 Order, that provides an

exception to the general rule that a debtor may be called on the cell phone number they provided their original creditor. Because of the HIPAA's statutory "instructions to the contrary," no "prior express consent" existed for Defendant's autodialed phone calls containing a prerecorded message to be placed to Plaintiff's and the class' cell phones. Therefore, Defendant's conduct violated the TCPA entitling Plaintiff and the class to an award of appropriate statutory damages per prohibited phone call placed.

## FACTS

In connection with Plaintiff's health care provider's treatment of him, he provided his cell phone number though a patient information form. (Plt. SMF ¶¶ 3-5). Plaintiff believed his provider would use his cell phone number so that he could be contacted for appointments. (Id. ¶ 6). Plaintiff believed that any billing issues with his health care provider would be handled though his insurance carrier or that his provider would send him a written bill. (Id. ¶¶ 7-8).

Defendant is a debt collector engaged in the collection of medical debts. (Def. SMF ¶ 2; Plt. SMF ¶ 10). Defendant was attempting to collect from Plaintiff and the certified class medical debts. (Plt. SMF ¶¶ 9, 13).

Defendant's one machine automatically dials a debtor's telephone number without a human hand dialing the number. (Plt. SMF ¶¶ 11-12). Accompanying Defendant's autodialed calls was a prerecorded voice message that only identified Defendant by its acronym, "ICS", not its full business name. (Id. ¶ 24-25). Plaintiff did not know what Defendant's autodailed prerecorded message was regarding until obtaining the information in discovery. (Id. ¶ 26).

From March 2009 to November 2009, Defendant intentionally placed 38 autodialed phone calls to Plaintiff's cell phone. (Id. ¶¶ 3-4, 18-19). Defendant also intentionally placed 17,945 calls to the 450 class members' cell phones, over 100 phone calls to 11 class members,

with a high of 143 autodialed phone calls to one class member. (Id. ¶¶ 20-23). All of these calls were related a medical debt. (Id. ¶¶ 9, 13).

At all times relevant to Plaintiff's Complaint, Defendant did not attempt to determine whether a telephone number its autodialer called was associated with a cellular telephone. (Plt. SMF ¶ 27). Defendant did not rely upon any written material that identified what information is PHI under the HIPAA in developing its collection practices. (Id. ¶ 28). Defendant is aware of the HIPAA's minimum necessary provision and interprets the requirement as setting the informational "floor" to use "as little as possible information . . . the original creditor, the balance due." (Id. ¶ 29). Neither Defendant's training manual nor any documents it produced in discovery define or discuss HIPAA's minimum necessary requirements as applied to its collection business. (Id. ¶ 30).

Defendant employee acknowledged that to comply with the Fair Debt Collection Practices Act ("FCPA") a debt collect does not need to call the debtor. (Id. ¶ 31). If authorized by the creditor, Defendant will send the delinquent medical collection account to a law firm to initiate legal proceedings against the debtor. (Id. ¶ 32). To attempt to collect a debt, neither an attorney or a debt collector needs the debtor's telephone number. (Plt. SMF ¶¶ 33-34).

## ARGUMENT

### I. Summary Judgment Standard

In *Diamond v. BP Prods. N. Am., Inc.*, 10 C 470, 2010 U.S. Dist. LEXIS 119593 (N.D. Ill. Nov. 9, 2010) (Guzmán, J.), this Court outlined the standard to be applied when ruling on a motion for summary judgment. *Id.*, at * 6.

## II.     Defendant's Automated Telephone Dialing Machine is Subject to the TCPA

Defendant's machine automatically dials debtors' telephone numbers without a human hand. (Plt. SMF ¶ 11).  The FCC has held that such a machine falls within the prohibition in 47 U.S.C. § 227(b). *In re Rules and Regulations Implementing the TCPA*, GC Docket 02-279, ¶ 13 (January 4, 2008).  Defendant has stipulated that its machine is a "predictive dialer" under the FCC Order. (Plt. SMF ¶ 12).  Therefore, Defendant's machine is subject to the TCPA. *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449-50 (7th Cir. 2010); *Hicks v. Client Servs.*, 2008 U.S. Dist. LEXIS 101129 * 12 (S.D. Fla. Dec. 11, 2008).

## III.    The HIPAA's Privacy Protections are Statutory Instructions to the Contrary" that under the TCPA Prohibited Defendant Autodialed Phone Calls to Plaintiff's and the Class' Cell Phones

Defendant cites the FCC's 1992 and 2008 Orders as both being applicable to the matter. (Def. Memo., p. 5). However, Defendant conflates the Orders dealing with different subjects. The FCC's 1992 Order was issued in the context of establishing the telemarketing "do not call list".  7 FCC Rcd 8752 at * 8753; 1992 FCC LEXIS 7019 (Sept. 17, 1992). It is quite clear from paragraph 31 of the 1992 Order that it does not deal with consent in the context of robocalls.  *Id*., at * 8769.

The 2008 FCC Order deals with "prior express consent" within the debtor-creditor context, which is the case here.  The 2008 Oder details the limited circumstance in which such consent will be found, and then incorporates the 1992 Order's "absent instructions to the contrary" provision. *In re Rules and Regulations Implementing the TCPA*, GC Docket 02-278; 07-232, p. 7, ¶ 9 (January 4, 2008). Liability under the TCPA attaches even when a debtor previously provided his cellular telephone number to the original creditor when "instructions to the contrary" exist. *Sengenberger v. Credit Control Servs*., 09 C 2796, 2010 U.S. Dist. LEXIS

43874 * 9-10 (N.D. Ill. May 5, 2010) (finding that the debt collector violated the TCPA and the FDCPA for not ceasing using its autodialer to call the plaintiff after it received written instructions that the defendant was not to further call the plaintiff's telephone number).

The FCC's 2008 Order incorporating the "instructions to the contrary" language supports Plaintiff's TCPA claim. Defendant's Motion however relies on *Greene v. DirecTV, Inc.*, 10 C 117, 2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010), in which the court granted the defendant's motion to dismiss finding that the plaintiff, "expressly consented to the fraud alert phone call by releasing her cell phone number as the one at which she wished to be reached." *Id.*, at * 9. *DirecTV* is distinguishable as it did not involve a debtor-creditor relationship and therefore did not involve the "instructions to the contrary" provision of the 2008 Order.

Plaintiff provided his cellular telephone number to his health care provider as a part of a patient contact information questioner. (Plt SMF ¶¶ 3-5). However, Plaintiff's act does not amount to a waiver of his privacy protections under HIPAA. In order to waive a statutory right, the waiver must clearly, explicitly, and unmistakably waive the right. *See Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 75 L. Ed. 2d 387, 103 S. Ct. 1467 (1983) (discussing contractual waivers of statutory rights). As demonstrated by the FCC 2008 Order, it is the Defendant's burden of production to demonstrate that there was a knowing waiver. *In re Rules and Regulations Implementing the TCPA*, GC Docket 02-278; 07-232, at 7, fn 38 (January 4, 2008); *Sengenberger*, 2010 U.S. Dist. LEXIS 43874 * 7-8. Here, Plaintiff provided his cellular telephone to his healthcare provider so he could be contacted for appointments, (Plt. SMF ¶ 6), and therefore no waiver exists.

## IV. Defendant was Required to Comply with the HIPAA, the TCPA and the FDCPA

Contrary to Defendant's position, HIPAA and the TCPA are interrelated and Defendant

5

was required to abide by the Acts' requirements. The applicability of the HIPAA's restrictive privacy protections as applied to the TCPA are clearly illustrated in the FCC's March 22, 2010, proposed rulemaking, attempting to reconcile the FTC's recently promulgated rule creating a specific "healthcare-related prerecorded message" exemption to the TCPA's prohibitions. Federal Communications Commission, 47 CFR Parts 64 and 68 [CG Docket No. 02-278; FCC 10-18], Telephone Consumer Protection, Proposed Rule, F.R. Vol. 75, No. 54, 13471, pp. 13476-13477 ¶¶ 21-23 (March 22, 2010) (emphasis added); *see also* Federal Trade Commission, 16 CFR Part 310, Telemarketing Sales Rule, F.R. Vol. 75, No. 153, 48458, p. 48521 (Aug. 10, 2010) (adopting amendments to the Telemarketing Sales Rule) (effective date September 27, 2010) (creating an exception under the TCPA in that, "This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.") § 310.4(b)(v)(B)(ii)(D). Logically, if the HIPAA did not apply to the TCPA, there would not be a need for the FTC and the FCC to carve out an exception for "prerecorded healthcare messages."

The TCPA and the HIPAA are two federal Acts that promulgate privacy and data protections that are not mutually exclusive, their protections overlap. *Id.*; *see also* Privacy of Consumer Financial Information, 65 Fed. Reg. 33,646, 33,648 (May 24, 2002) (to be codified at 16 C.F.R. pt. 313) ("Given the broad definition of 'financial institution' under the G-L-B Act, certain entities are subject to these privacy rules as well as rules promulgated under HIPAA regarding appropriate handling of protected health information."); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 731 (7th 2004) (*citing Humana Inc. v. Forsyth*, 525 U.S. 299, 142 L. Ed. 2d 753, 119 S. Ct. 710 (1999) ("Whether overlapping and not entirely congruent remedial systems can

coexist is a question with a long history at the Supreme Court, and an established answer: yes."); *Cf. Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*, LLP, 540 U.S. 398, 157 L. Ed. 2d 823, 124 S. Ct. 872 (2004) (Telecommunications Act of 1996 and Sherman Act of 1890 both apply to communications industry, each statute with distinct standards of conduct and liability).

Even if the HIPAA's and the TCPA's privacy laws were conflicting, which they are not, the Seventh Circuit has held that where there are two conflicting federal statutes, companies must comply with both. *Randolph*, 368 F.3d at 732 (corporate defendant was charged with compliance with both the FDCPA and the IRS code, even though the two laws were 'not entirely congruent.'). Because Defendant is a debt collector of medical debts that utilized an automatic dialer with a prerecorded voice, it must comply with the HIPPA, the TCPA, and the FDCPA.

## V.     A Cellular Telephone Number is Protected Health Information ("PHI")

Defendant's argument that a telephone number is not PHI also fails in light of the HIPAA's broad definition.   The HIPAA defines PHI as a subset of individually identifiable health information. The latter phrase in turn is defined as health information that:

> (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
>> (i) That identifies the individual; or
>> (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

(Def. Memo, p. 10) (*citing* 45 C.F.R. § 160.103, definitions of Individually Identifiable Health Information and Protected Health Information).

Contrary to Defendant's Motion, a person's telephone number is clearly PHI. *See* 45 C.F.R. §§ 164.103 (*Health Information*); 164.502(a); 506(a); 508(a); 164.514(b)(2)(D) (classifying telephone numbers as individually identifiable health information); 42 U.S.C. §§ 1320d(4)(A), (B); 42 U.S.C. § 1320d (6); *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St. 3d 518, 522, 844 N.E.2d 1181, 11854 (Ohio 2006); Daniel Charles Rubenstein, B.S.E., The Emergency of Mandatory Wellness Programs in the United States: Welcoming, or Worrisome?, Journal of Health Care Law and Policy, 12 J. Health Care L. Pol'y 99, at * 110 (2009) (*citing* 45 C.F.R. § 164.514) (Exhibit B)[1] ("PHI is broadly defined, and encompasses . . . phone and fax numbers"); Douglas Danner, Larry L. Varn, Susan J. Mathias, Medical Malpractice Checklists and Discovery Database updated July 2009, Part VII. Special Studies, Chapter 36. Managed Care Misfeasance Special Study, 5 Med. Malprac. Chklsts. & Disc. § 36:9, at p. 57 (Exhibit C) (Definition of PHI includes, "any data that may directly or indirectly identify a person including . . . telephone number"); *See also* Clark Stanton, Fifth Annual Institute on Privacy Law 2004: New Developments & Compliance Issues in a Security-Conscious World, Healthcare Privacy: The Health Insurance Portability and Accountability Act of 1996 (HIPAA), Practicing Law Institute, Patents, Copyrights, Trademarks, and Literary Property Course Handbook Series, PLI Order Number 2824, 789 PLI/Pat 53, at * 110 (June 2004) (Exhibit D); Federal Communications Commission, 47 CFR Parts 64 and 68 [CG Docket No. 02-278; FCC 10-18], Telephone Consumer Protection, Proposed Rule, F.R. Vol. 75, No. 54, 13471, p. 13476 ¶ 22 (March 22, 2010) ("In addition, it notes that, with limited exception, HIPAA requires that a 'covered entity' obtain an individual's written authorization before using protected health information (including the individual's name and telephone number) for marketing purposes.").

---

[1] The pinpoint cited pages of Exhibits B-D above are attached for the Court's convenience.

## VI. Use of a Telephone Number by a Business Associate acting as a Debt Collector Exceeds HIPAA's Minimum Necessary Requirement in Seeking Payment

Plaintiff agrees with Defendant that, "HIPAA allows a covered entity to use and disclose PHI without patient consent for treatment, payment, and health care operations -so-called routine uses." (Def. Memo, p. 9) (*citing Citizens for Health v. Leavitt*, 428 F.3d 167, 173-74 (3d Cir. 2005)) (*citing* § 164.506(a)). Defendant's Motion however does not present any evidence that health care providers engaged in "payment" activities are permitted under the HIPAA to use the debtor's telephone number. Even the affidavit of Lisa Alvarado, the Vice President of Reimbursement at Midwest, Plaintiff's healthcare provider, does not state that a telephone number can be used by a health care provider for "payment" purposes. (Def. SMF, Ex. 2, Alvarado Aff.). As demonstrated below, the use of a telephone number exceeds the "minimum necessary" restrictions for the use of PHI.

A business associate is required to follow the HIPAA's minimum necessary requirement for the use and disclosure of PHI. 45 C.F.R. §§ 164.514(d)(1), (d)(3)(i); *Monarch Fire Prot. Dist. v. Freedom Consulting & Auditing Srvs., Inc.*, 678 F. Supp. 2d 927, 932 (E.D. Mo. 2009) (*citing* 45 C.F.R. §§ 164.502(e)) ("In order to share PHI with third parties . . . HIPAA requires health care plans and providers to enter into business associate agreements, contracts obligating the third parties to abide by HIPAA's restrictions on PHI disclosures.") A covered entity and its business associate's use or disclosure of PHI is limited by HIPAA's "minimum necessary" requirement as follows:

> (d)(1) *Standard: Minimum necessary requirements.* In order to comply with §164.502(b) and this section, a covered entity must meet the requirements of paragraphs (d)(2) through (d)(5) of this section with respect to a request for, or the use and disclosure of, protected health information.
> * * *
> (d)(3) *Implementation specification: Minimum necessary disclosures of protected health information.*

> (i) For any type of disclosure that it makes on a routine and recurring basis, a covered entity must implement policies and procedures (which may be standard protocols) that limit the protected health information disclosed to the amount reasonably necessary to achieve the purpose of the disclosure.

45 C.F.R. §§ 164.514(d)(1), (d)(3)(i).

The U.S. Department of Health and Human Services has commented on the HIPAA's privacy requirements regarding health care providers sharing PHI for payment purposes as follows:

> These provisions do not eliminate a covered entity's responsibility to apply the Privacy Rule's minimum necessary provisions to both the disclosure of and request for information for payment and health care operations purposes. In addition, the Department continues to strongly encourage the use of de-identified information wherever feasible.

Standards for Privacy of Individually Identifiable Health Information, 67 FR 14776, 14783 (proposed March 27, 2002) (to be codified at 45 C.F.R. pt. 160 and 164). Under the HIPAA, the de-identification of PHI includes the removal of the individual's telephone number. 45 C.F.R. § 164.514 (b)(2)(i)(D).

"[T]he dictionary definition of 'necessary' [means] 'essential' or 'indispensable[.]'" *Cellco P'ship v. FCC*, 357 F.3d 88, 95 (D.C.C. 2004) (*quoting* Merriam Webster's Collegiate Dictionary 774 (10th ed. 2000)). The United Stated Department of Health & Human Services ("DHHS") has commented about the HIPAA governing debt collectors and has stated that, "Where a use or disclosure of protected health information is necessary for the covered entity to fulfill a legal duty, the Privacy Rule would permit such use or disclosure as required by law." DHHS, Health Information Privacy, Does the HIPPA Privacy Rule prevent health plans and providers from using debt collection agencies? Does the Privacy Rule conflict with the Fair Debt Collection Practices Act?, *available at* http://www.hhs.gov/ocr/privacy/hipaa/

faq/providers/smaller/268.html (last visited Nov. 16, 2009) (Exhibit E). Calling a debtor's telephone number is not essential, indispensable, nor is it required by any law applicable to a debt collector's attempts to collect a debt.

In *Zaborac v. Mut. Hosp. Serv.*, 1:03-cv-1199-LJM-WTL, 2004 U.S. Dist. LEXIS 22816 (S.D. Ind. Oct. 7, 2004), the court discussed HIPAA's minimum amount necessary rule as it applies to the attempted collection of a medical debt as follows:

> However, a debt collector should disclose only the minimum information necessary. See id. § 164.502(b)('When using or disclosing protected health information . . . a covered entity must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request.'). The Fourth Circuit Court of Appeals' opinion in *Chaudhry v. Gallerizzo* is instructive. In that case, involving debt for attorneys' fees, the court explained that debt verification requires only a written confirmation that the debt collector is demanding what the creditor claims is owed. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). Details of the alleged debt are not required. *See id.*

*Id.* at * 5 – 6.

*Zaborac* illustrates that in an attempt to collect a medical debt, all the PHI that is needed is the name and address of the debtor to send the communication to, the name of the medical creditor and the amount owed. Furthermore, no case law exists that holds that a debt collector is entitled to call a debtor or that a debt collector must call the debtor to comply with the FDCPA. Because Defendant is a debt collector, (Def. SMF ¶ 2), the minimum necessary action Defendant needs to do to comply with the FCPA is "send the consumer a written notice" containing the required disclosures, the name of the creditor and the amount owed. 15 U.S.C. § 1692g(a)(1)-(5). Therefore, the minimum amount of PHI reasonably necessary to collect a debt prior to taking legal action or to contact a debtor for payment purposes does not include the use of a debtor's telephone number.

Defendant's clients can authorized it to send the account to an attorney to file suit against the debtor. (Plt. SMF ). Here again, the minimum amount of PHI necessary for an attorney to file a collection suit on behalf of the attorney's creditor client against the debtor does not require the attorney to obtain or use the debtor's telephone number. (Id. ¶¶ 26, 27); *See also e.g.* AO 44, Summons in a Civil Action (Rev. 05/00), *available at* http://www.ilnd.uscourts.gov/home/OnlineForms.aspx.[2]

Finally, by way of example, that a telephone number's use is not needed in relation to the collection of a medial debt is found within the HIPAA's provisions regulating credit reporting of a debt for payment purposes. Under the HIPPA, a business associate is prohibited form disclosing the debtor's telephone number to a credit reporting agency. 45 C.F.R. § 164.501 (not listing a telephone number as permitted PHI that may be sent to a credit reporting agency). Reporting a debt on a person's consumer report is a form of debt collection. *See Purnell v. Arrow Fin. Servs., LLC*, 303 Fed. Appx. 297, 303-04 (6th Cir. 2008) (unpublished) (assuming without deciding that reporting a disputed unverified debt violated the Fair Debt Collection Practices Act); *Edeh v. Midland Credit Mgmt.*, Case No. 09-CV-1706 (PJS/FLN), 2010 U.S. Dist. LEXIS 103888 * 9 (D. Minn. Sept. 29, 2010); *Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1279 (S.D. Ala. 2009).

The examples above demonstrate that a debt collector - business associate's use of a cellular telephone number while engaged in the collection of a medical debt exceeds the HIPAA's "minimum necessary" privacy protections. Therefore, under the HIPAA's statutory "minimum necessary" "instructions to the contrary", no "prior express consent" existed for Defendant to use Plaintiff's and the class members' cellular telephone numbers for "payment."

---

[2] The Court can also take judicial notice that a telephone number is not needed to file suit against a party. *See Diaz v. Legion Pers., Inc*., 10 C 1500, 2010 U.S. Dist. LEXIS 97494 * 6 (Sept. 15, 2010) (Guzmán, J.) (*quoting* Fed. R. Evid. 201(b))

12

Defendant's Motion should likewise be denied as it has failed to demonstrate that its autodialer campaign was necessary to collect a debt. During the class time period, Defendant's autodialer placed a total of 17,945 calls to the 450 class members' cell phones, calling 11 class members over 100 times, including a high of 143 calls to one class member, cannot be considered to be essential or an indispensable act needed to collect a debt. (Plt. SMF ¶¶ 20-22). Indeed, Defendant's autodialer campaign was inept using a prerecorded message that did not provide Defendant's business name, just the acronym "ICS", (Id. ¶¶ 24-25), which is expressly prohibited by the technical requirements of the TCPA. 47 §§ 227(d)(1)(A), (d)(3)(A)(i). Furthermore, Plaintiff did not know what Defendant's autodailed prerecorded message was regarding until obtaining the information in discovery via this lawsuit. (Plt. SMF ¶ 26).

In an attempt to persuade this Court that a telephone number does not exceed the HIPAA's minimum necessary requirement, attached to Defendant's Motion is an affidavit from one of Defendant's employees, Mr. Gleb, stating in a cursory manner that calling a debtor is "necessary." (Def. SMF, Ex. 1 ¶ 6). However in the next sentence, Defendant couches its position by describing phone calls to debtors as means which its, "ability to collect the debt is significantly improved. . . ." (Id.). Furthermore, contrary to his affidavit, Mr. Gleb's in his deposition stated that the HIPAA's minimum necessary requirement imposes a "floor" to use "as little as possible information . . . the original creditor, the balance due." (Plt. SMF ¶ 29). Defendant's statements conflict and therefore the Court should not accept its unsupported statement that calling a debtor is "necessary." *See Thomas v. Christ Hosp. & Med. Ctr.,* 328 F.3d 890, 894 (7th Cir. 2003) ("[I]t is clear that conclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment."); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing*

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, (1990)) (conclusory allegations unsupported by specific facts are insufficient to rebut evidence supporting a summary judgment motion.).

Additionally, Defendant's statement of calling debtors is "necessary" is mere unsupported speculation. Speculation alone is insufficient to carry a party's burden in moving for or rebutting a motion for summary judgment. *Pulido*, 2010 U.S. Dist. LEXIS 113843 at * 6; *Cf. Villagomez v. Sherman Hosp.*, 09 C 2540 2010 U.S. Dist. LEXIS 71121 (Guzmán, J) (in employment discrimination cases "subjective belief . . . is insufficient to defeat summary judgment. . . ."). Therefore, for the reasons above, Plaintiff and the certified class are entitled to an entry of summary judgment in their favor and Defendant's Motion must be denied.

## DAMAGES

The TCPA sets statutory damages in the amount of $500.00 per violation, and "[i]f the court finds that the defendant willfully or knowingly violated this subsection [§ 227(b)] or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3). A violation of the TCPA can be triggered by the placement of the call to a cell phone regardless of whether the call is answered. *Abbas v. Selling Source, LLC*, 09 C 3413, 2009 U.S. Dist. LEXIS 116697 * 9-10, 16 (N.D. Ill. Dec. 14, 2009); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010).

Defendant without prior express consent intentionally placed 38 calls to Plaintiff's cell phone with its autodialer. Therefore Plaintiff is entitled to statutory damages in the amount of $19,000 or $57,000 at the Court's discretion that the defendant willfully or knowingly violated TCPA § 227(b) is made. Defendant intentionally placed a total of 17,945 calls to the 450 class

member's cell phones without their prior express consent. Therefore the class is entitled to a judgment in the amount of $8,972,500 or $26,917,500 at the Court's discretion that the defendant willfully or knowingly violated TCPA § 227(b) is made.

"[T]o establish a knowing or willful violation under the TCPA for the award of treble damages . . . a plaintiff need not prove that the defendant knew that conduct violated the law but only that the defendant knew the underlying facts of the conduct." *Charvat v. Ryan*, 116 Ohio St. 3d 394 , 401-2, 879 N.E.2d 765, 772 (Ohio 2007). Here Defendant knew that it was using an automatic dialer, was collecting a medical debt, intentionally called telephone numbers without any regard to whether the telephone number it was calling was a cellular telephone number, did so without obtaining any legal opinion whether it was permissible under the HIPAA to use debtors' cellular telephone numbers, and used a prerecorded message that did not comport with the technical requirements of the TCPA. (Plt. SMF. ¶¶ 11-13, 19, 23-28, 30). Therefore, "Defendant[] intentionally made the contested phone calls to Plaintiff" and such calls are to be considered 'willful or knowingly.'" *Sengenberger*, 2010 U.S. Dist. LEXIS 43874 * 18.

## CONCLUSION

WHEREFORE, for the reasons above, Plaintiff requests this Honorable Court to enter summary judgment for Plaintiff and the certified class, award appropriate statutory damages per violation to Plaintiff and each class member and to deny Defendant's Motion.

Respectfully submitted,

By: /s/ Curtis C. Warner
           Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
 (312) 238-9820 (TEL)
*Counsel for Plaintiff and the Certified Class*

15

## CERTIFICATE OF SERVICE

I, Curtis C. Warner, hereby certify that on **January 19, 2011**, I filed electronically **Plaintiff's Memorandum in Support of his Cross-Motion for Summary Judgment and Response in Opposition to Defendant's Motion for Summary Judgment and attached exhibits** using the Court's CM/ECF system, which automatically will send notice to those parties who have appeared and are so registered to the following:

David M. Schultz
Peter E. Peterson
Avanti Deepak Bakane
Hinshaw & Culbertson LLP
222 No. LaSalle St., Ste. 300
Chicago, IL 60601-1081

Respectfully submitted,

By: /s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
155 N. Michigan Avenue, Suite 560
Chicago, Illinois 60601
(312) 238-9820 (TEL)
*Counsel for Plaintiff and the Certified Class*