**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES A. MITCHEM, individually and on behalf of a class of similarly situated persons,<br><br>        **Plaintiff,**<br><br>v.<br><br>ILLINOIS COLLECTION SERVICE, INC.,<br><br>        **Defendant.** | Case No.: 09 C 7274<br><br>Judge Guzmán<br><br>Magistrate Judge Mason |

**COMBINED REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
AND RESPONSE IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION**

Defendant, ILLINOIS COLLECTION SERVICE, INC. ("ICS"), respectfully submits this combined reply in support of its motion for summary judgment and response in opposition to plaintiff's cross-motion for summary judgment on the TCPA claim asserted in Count II of the complaint.

**I.    INTRODUCTION**

In its opening brief, ICS demonstrated that the prerecorded message calls it made to Plaintiff, James A. Mitchem, and the Class members complied with the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), because the called parties knowingly released their phone numbers to their creditors, and they thereby gave ICS (the debt collector hired by the creditors) permission to call them at the numbers so provided. Mitchem argues that, because ICS was trying to collect medical debts, HIPAA[1] forbade the creditors to release the Class members' phone numbers to ICS, and the Class members therefore did not consent to receive ICS's calls. This argument, however, is based on two mistaken premises: that HIPAA

---

[1] The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), §§ 261-264, Public Law 104-191, 110 Stat. 2033-2034 (codified at 42 U.S.C. §§ 1320d - 1320d-8).

governs whether a debtor has consented to receive a debt collector's phone calls for purposes of the TCPA, and that HIPAA forbids a health care provider to release a patient's phone number to a debt collector. Below, ICS shows that these premises are false. Because Mitchem and the Class members gave consent for ICS to call them using prerecorded messages and automated dialing equipment, summary judgment must be entered in ICS's favor on the TCPA claim. Furthermore, because ICS's calls were permissible under a reasonable interpretation of the statute, the calls could not constitute willful violations of the TCPA.

## II.     RESPONSE TO MITCHEM'S FACTS

The Facts section in Mitchem's memorandum of law ("Plaintiff's Memorandum") contains several incorrect assertions, but none of Mitchem's factual assertions (whether correct or incorrect) preclude the entry of summary judgment in ICS's favor. The facts entitling ICS to summary judgment are undisputed. Rather than discussing Mitchem's asserted facts in this brief, ICS will address them in its response under Local Rule 56.1 to Mitchem's Counterstatement of Additional Facts (Docket # 94).

## III.    ARGUMENT

### A.     Mitchem and the Class members consented to receive ICS's collection calls when they released their phone numbers to their creditors.

The TCPA prohibits using automated dialing equipment and prerecorded messages to call a cell phone only if the call is made without the called party's express consent. 47 U.S.C. § 227(b)(1)(A). The Federal Communications Commission ("FCC") has clarified what constitutes "express consent" pursuant to its authority to create rules and regulations implementing the TCPA. *See* 47 U.S.C. § 227(b)(2). In a declaratory ruling, the FCC concluded that "prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." The "provision of a cell

130069682v2 0907481 07791

phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9-10 (the "2008 Order"). Auto-dialed calls made by a debt collector to the number that the debtor gave to the creditor are deemed made with the debtor's consent, and they therefore comply with § 227(b)(1)(A)(iii). *Id.*

The rule set forth in the 2008 Order is a corollary of the FCC's earlier determination that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8769 ¶ 31 (1992) (the "1992 Order"). Since Mitchem and the Class members released their phone numbers to their creditors, under both the 2008 Order and the 1992 Order[2] they gave an "invitation or permission to be called at the number, absent instructions to the contrary." Mitchem does not allege that he gave his creditor, Midwest Orthopaedics at Rush LLC ("Midwest"), "instructions to the contrary." Mitchem did not tell Midwest to refrain from calling him at the number he provided, or to refrain from calling him using prerecorded messages. As a result, Mitchem consented to receive ICS's calls, and the calls complied with the TCPA.

Mitchem seeks to escape the effect of the FCC's orders by arguing that HIPAA amounts to a "statutory instruction to the contrary," which negates the consent that he and the Class members otherwise gave under the orders. (Plaintiff's Memorandum at 5). The phrase

---

[2]  Plaintiff incorrectly argues that ¶ 31 of the 1992 Order governs telemarketing calls, but not the use of automated dialing equipment to call cell phones. ¶ 31 appears within § 2 of the 1992 Order, which is titled "Prior Express Consent." ¶ 29 indicates that § 2 deals with when a called party will be deemed to have consented to be contacted by means of "autodialed and prerecorded message calls."

3

"instructions to the contrary," however, refers to an instruction given by the called party, not a restriction allegedly imposed by an unrelated federal law. Mitchem does not offer any basis for this Court to conclude that the terms of HIPAA control whether he consented to receive ICS's calls for purposes of the TCPA. Furthermore, as explained in detail below, even if the requirements of an unrelated statute in principle could amount to "instructions to the contrary" for purposes of the FCC's orders, HIPAA gave no such instructions since it expressly permitted Midwest to disclose Mitchem's number in order to obtain payment of Mitchem's debt. The provision by Mitchem and the Class members of their phone numbers to the creditors demonstrates that ICS had consent to call them using prerecorded messages. The TCPA claim therefore fails.

Mitchem's reliance on *Sengenberger v. Credit Control Services, Inc.,* 2010 U.S. Dist. LEXIS 43874, *9-10 (N.D. Ill. 2010), is unavailing. The debt collector in that case continued making automated calls to the debtor's cell phone after the debtor sent the collector a letter which instructed the collector to cease calling him, thereby revoking consent to be called on his cell phone. The calls placed after the collector received the letter were made without the debtor's consent, and they therefore violated the TCPA. Here, in contrast, Mitchem did not instruct ICS to cease calling him.

Mitchem seeks to distinguish *Greene v. DirecTV, Inc.*, 2010 WL 4628734, *3 (N.D. Ill. 2010), on the ground that the prerecorded message call in that case was not made to collect a debt. This is a distinction without difference. In *Greene,* the TCPA claim failed because the plaintiff had knowingly released her phone number to the defendants. Mitchem's TCPA claim fails for precisely the same reason. The facts here are indistinguishable from the facts in *Starkey v. Firstsource Advantage, LLC,* 2010 WL 2541756, *3 (W.D. N.Y. 2010). In that case, the court

4

held that auto-dialed calls made by a debt collector complied with the TCPA because the plaintiff had given her creditor the number that the debt collector called. *See also Cunningham v. Credit Management, L.P.,* 2010 WL 3791104, *5 (N.D. Tex. 2010).

Mitchem argues that by releasing his phone number to Midwest he did not waive his privacy protections under HIPAA because he disclosed the number only to enable Midwest to schedule his appointments. (Plaintiff's Memorandum at 5). This argument is a red herring. Mitchem has asserted a claim under the TCPA, not HIPAA, and whether he waived any rights under HIPAA is immaterial to the disposition of the TCPA claims. In addition, Mitchem's argument is predicated on the incorrect assumption that Mitchem had a privacy right under HIPAA which barred Midwest from disclosing the number to ICS. In fact, as is explained below, HIPAA expressly permitted Midwest to disclose Mitchem's number to ICS in order to obtain the payment due from Mitchem.

**B. Though ICS is admittedly subject to HIPAA, HIPAA does not control whether ICS had consent to call Mitchem and the Class members.**

Mitchem argues at length that ICS is subject to the requirements imposed by HIPAA. (Plaintiff's Memorandum at 5-7). This is a point which ICS has never disputed and which in the end does not support Mitchem's TCPA claim. It is a non sequitur to conclude, as Mitchem does, that, because HIPAA applies to ICS, HIPAA also controls whether ICS had consent to make auto-dialed calls to Mitchem and the Class members.

ICS's opening brief showed that the TCPA, and not HIPAA, controls whether Mitchem and the Class members consented to receive phone calls from ICS for purposes of the TCPA's restriction on the use of automated dialing equipment to call cell phones. The TCPA and HIPAA

130069682v2 0907481 07791

are administered by different agencies. The TCPA is administered by the FCC.[3] HIPAA is administered by the Department of Health and Human Services ("DHHS").[4] The statutes regulate different fields of activity. The TCPA was enacted to curb unsolicited telephone advertisements and to "regulate[] the use of automated telephone equipment." *See e.g.* 2008 Order ¶ 2. HIPAA was enacted to provide for "the establishment of standards and requirements for the electronic transmission of certain health information." *Citizens for Health v. Leavitt,* 428 F.3d 167, 172 (3d Cir. 2005).

Nothing in the TCPA or the implementing regulations suggests that consent to prerecorded messages is defined in terms of whether a creditor may, consistent with HIPAA, release the debtor's cell phone number to the debt collector. The TCPA does not refer to HIPAA, nor does HIPAA refer to the TCPA. All of this demonstrates that whether a debtor consented to receive auto-dialed collection calls under the TCPA does not depend on whether HIPAA allowed the health care provider to release the debtor's phone number to the debt collector. Hence, even if for the sake of argument HIPAA barred medical creditors from disclosing the Class members' phone numbers to ICS, Mitchem and the Class members still consented to receive ICS's calls for purposes of the TCPA.

Mitchem tries to support his argument that HIPAA controls the consent analysis under the TCPA by pointing to the FCC's notice of a proposed rulemaking that would harmonize the FCC's TCPA regulations and the Federal Trade Commission's ("FTC") Telemarketing Sales Rule. The Telemarketing Sales Rule forbids telemarketers to make "any outbound telephone call

---

[3] 47 U.S.C. § 227(b)(2) requires the "Commission" to prescribe regulations for implementing the TCPA's prohibitions in § 227(b). The term "Commission" is defined as the FCC. 47 U.S.C. § 154(a).

[4] HIPAA was enacted as §§ 261-264 of Public Law 104-191 and is codified at 42 U.S.C. §§ 1320d - 1320d-8. 45 C.F.R. § 164.102; 67 FR 14776. 42 U.S.C. § 1320d-1(d) provides that the "Secretary shall establish specifications for implementing each of the standards adopted under" HIPAA. "Secretary" is defined as the Secretary of the DHHS. 42 U.S.C. § 1320(a)(6).

that delivers a prerecorded message" unless, among other things, the seller has obtained from the recipient of the call a written agreement that evidences "the willingness of the recipient to receive calls that deliver prerecorded messages." 16 C.F.R. § 310.4(b)(v). The FTC has exempted from this prohibition "prerecorded healthcare messages" made by a "covered entity" or a covered entity's "business associate," as those terms are defined by HIPAA. § 310.4(b)(v)(D). In the FCC's notice of proposed rulemaking, the FCC requested comments on whether "it likewise should exempt [health care-related prerecorded message calls] from the general prohibition on prerecorded message calls [made] to *residential lines*[5] under the TCPA." 75 FR 13,471, 13,476 (March 22, 2010) (italics added). Mitchem fails to give any reason why the overlap between the FCC's proposed rule and the FTC's rule should lead this Court to find that HIPAA controls the consent analysis under the TCPA. Because the FCC's proposed rule does not suggest that consent under the TCPA is controlled by HIPAA, the proposed rule affords no support to Mitchem's argument.

Mitchem's TCPA claim is flawed because the TCPA does not provide a private right of action for a purported violation of HPAA. If for the sake of argument Midwest or ICS violated HIPAA (which they deny), Mitchem could not recover damages under the TCPA based upon that purported violation. Nor is consent under the TCPA controlled by HIPAA. Since HIPAA and the TCPA are administered by different agencies, they regulate different fields of activity, and they do not refer to each other, ICS would have had consent to call Mitchem and the Class members even if HIPAA barred the creditors from disclosing the Class members' phone numbers to ICS.

---

[5] Mitchem's claim involves the TCPA prohibition on making prerecorded message calls to cell phones, § 227(b)(1)(A)(iii), while the notice of proposed rulemaking deals with the TCPA prohibition on making prerecorded message calls to residential telephone lines. § 227(b)(1)(B).

7

**C.     HIPAA permitted health care providers to give ICS the Class members' phone numbers for the purpose of collecting their debts.**

**1.     A phone number is not "protected health information"**

HIPAA allowed Midwest and the Class members' creditors to release their phone numbers to ICS, and therefore Mitchem and the Class members consented to receive ICS's calls, even if for the sake of argument HIPAA had some bearing on the consent analysis under the TCPA. HIPAA regulates the use and disclosure by covered entities of "protected health information" ("PHI"). 45 C.F.R. §§ 164.502(a); 506(a); 508(a). A patient's phone number is not PHI, and it is therefore not subject to HIPAA. HIPAA defines PHI as a subset of "individually identifiable health information." 45 C.F.R. § 160.103. "Individually identifiable health information" is defined as health information that:

> (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
>
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
>
> (i) That identifies the individual; or
>
> (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual. *See* 45 C.F.R. § 160.103, definitions of *Individually Identifiable Health Information* and *Protected Health Information*.

A phone number does not meet element (2) of the definition of "individually identifiable health information" because it does not relate to "the physical or mental health or condition" of a patient; "the provision of health care to" a patient; or "the past, present, or future payment for the provision of health care to" a patient. In response to this argument, Mitchem provides a page of string citations with parenthetical summaries of non-precedential cases and articles which he contends have recognized that a phone number is PHI. The documents cited by Mitchem assume without analysis that a phone number is PHI. They do not explain how a phone number can be

8

PHI when it does not relate to the physical or mental health of an individual; the provision of health care to the individual; or the payment for the provision of the health care to the individual. Because a phone number is not PHI, HIPAA does not restrict a covered entity's disclosure of a phone number. Thus, HIPAA did not proscribe Midwest's disclosure of Mitchem's number to ICS, and HIPAA does not vitiate the permission given by Mitchem and the Class members to receive ICS's collection calls.

### 2. Even if a phone number were PHI, a health care provider could disclose the number to a debt collector pursuant to its payment operations.

Even if a phone number were PHI, HIPAA would permit medical creditors to disclose a patient's number to a debt collector without regard to whether the patient consented to the release of the number. HIPAA allows a covered entity to use and disclose PHI *without patient consent* for "treatment, payment, and health care operations" – so-called routine uses. *Citizens for Health,* 428 at 173-74 citing 45 C.F.R. § 164.506(a). "Payment" under HIPAA is defined as "activities undertaken by … a health care provider … to obtain … reimbursement for the provision of health care." The term "payment" includes "collection activities." 45 C.F.R. § 164.501, Definition of *Payment.* Since HIPAA allows a health care provider to disclose PHI for purposes of its payment and collection activities, HIPAA did not prohibit Midwest or the Class members' creditors from disclosing their numbers to ICS. Thus, Mitchem's reliance on HIPAA would be unavailing even if HIPAA related to the consent analysis under the TCPA and even if a phone number amounted to PHI.

Mitchem seeks to avoid the conclusion that Midwest could disclose his phone number as part of its payment activities by invoking HIPAA's "minimum necessary" standard. This rule states that that, when a covered entity discloses PHI in connection with a routine use, it must "make reasonable efforts to limit [PHI] to the minimum necessary to accomplish the intended

9

purpose of the use, disclosure, or request." 45 C.F.R. § 164.502(b). Mitchem argues that "necessary" within § 164.502(b) means essential or indispensable, and that since ICS did not have to call his phone number in order to comply with the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, Midwest's disclosure of his number exceeded the minimum amount of information that was necessary to collect his debt. (Plaintiff's Memorandum at 10-11).

Mitchem offers no reasoning or authority to support his assumption that the "minimum necessary to accomplish [an] intended purpose" under HIPAA is defined in terms of the minimum information that is required to comply with the FDCPA. This assumption is incorrect because the FDCPA and HIPAA are distinct bodies of law, they are administered by different agencies, and they occupy different titles of the U.S. Code. HIPAA itself, not the FDCPA, defines what the "minimum necessary to accomplish the intended purpose of the use [or] disclosure" is.

The HIPAA regulations refer to the "minimum necessary" as the "amount [of PHI that is] *reasonably* necessary to achieve the intended purpose of disclosure." § 164.514(d)(3)(i) (italics added). The minimum necessary standard provides that a "covered entity must make reasonable efforts to limit [PHI] to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." § 164.502(b)(1). Both common sense and Randall Gelb's affidavit confirm that a debtor's phone number is reasonably necessary for a debt collector to collect a debt. (*See* ICS's Statement of Material Facts ("SMF") ¶ 9 (citing Docket # 87-1 ¶ 6)). As a result, a creditor's disclosure of a debtor's number to a debt collector does not violate the minimum necessary standard.

In the only case that Mitchem cites to support his assertion that the term "necessary" in § 164.502(b) means "absolutely essential," the court refused to give "necessary" such a restrictive

130069682v2 0907481 07791

and rigid gloss. *See Cellco Partnership v. F.C.C.,* 357 F.3d 88 (D.C. Cir. 2004). That case dealt with Section 11 of the Telecommunications Act of 1996 ("1996 Act"), which requires the FCC, upon biennial review, to repeal or modify any regulation that is "no longer necessary in the public interest as the result of meaningful economic competition between providers of such service." 47 U.S.C. § 161 (2002). Verizon Wireless filed a petition alleging that the FCC had violated § 11 by failing to repeal 47 C.F.R. §§ 43.61(a) and § 63.21(i) because those regulations were no longer indispensable to the public interest in light of current economic competition. 357 F.3d at 93. The D.C. Circuit rejected Verizon Wireless's narrow interpretation of "necessary" and ruled that that the FCC could retain existing regulations without finding that they were essential or indispensable. The court noted that since *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 413 (1819), the Supreme Court has recognized that "the term 'necessary' does not always mean 'indispensable' or 'essential,'" and that equating necessary with indispensable "would give an unwarranted rigidity to the application of the word 'necessary,' which has always been recognized as a word to be harmonized with its context." 357 F.3d at 97.

The landmark case of *McCulloch v. Maryland* is to the same effect. In determining whether the Necessary and Proper Clause in the United States Constitution granted Congress the power to establish a national bank, the Supreme Court rejected the rigid construction of the term "necessary" that Mitchem urges here. The Court stated that:

> in the common affairs of the world, [the term "necessary"] frequently imports no more than that one thing is convenient, or useful, or essential to another. To employ the means necessary to an end, is generally understood as employing any means calculated to produce the end, and not as being confined to those single means, without which the end would be entirely unattainable. *McCulloch v. Maryland,* 17 U.S. at 414.

A debtor's phone number is necessary to the collection of a debt under § 164.502(b) because it is convenient and useful to the task. The utility of a phone number is a matter of common sense,

11

and it is attested to in Randall Gelb's affidavit.[6] (SMF ¶ 9). Mitchem identifies no policy justification and no basis in the text of HIPAA for holding that the "minimum necessary" to collect a debt is limited to the information that is essential for a debt collector to comply with the FDCPA. Nothing in HIPAA's text suggests that the DHHS intended to prohibit debt collectors from calling medical debtors on their telephones, and thereby restrict collection communications to the U.S. Mail.

The other case Mitchem cites on this point also does not support his claim. In *Zaborac v. Mut. Hosp. Serv., Inc.,* 2004 WL 2538643, *2 (S.D. Ind. 2004), the court recognized that a debt collector could disclose PHI to a debtor's attorney because doing so was necessary to collect the debt. *Zaborac* nowhere suggests that a health care provider runs afoul of HIPAA's minimum necessary standard when it releases a patient's phone number to a debt collector.

Mitchem argues that under HIPAA a covered entity or business associate may not report a debtor's phone number to a credit bureau. (Plaintiff's Memorandum at 12). The provision that Mitchem cites, however, does not prohibit covered entities or business associates from reporting phone numbers to credit bureaus. *See* 45 C.F.R. § 164.501, definition of *Payment*. Rather, the cited regulation states that a covered entity's "Payment" activities include the disclosure to a credit bureau of various information, including an individual's name, address, payment history, and social security number. Mitchem offers no reason why the omission of phone numbers from this list should lead this Court to conclude that phone numbers are not reasonably necessary to collect debts. Even if *arguendo* a covered entity may not report an individual's phone number to

---

[6] Mitchem argues that Gelb (whom he incorrectly refers to as "Mr. Gleb") agreed at his deposition that the minimum necessary rule set forth a "floor" on the information that could be disclosed during collection operations, and this testimony allegedly conflicts with Gelb's affidavit. (Plaintiff's Memorandum at 13). However, Gelb's affidavit deals with whether ICS needs a debtor's phone number to collect a debt, whereas the cited testimony deals with the information that ICS may disclose under HIPAA. The two statements relate to different subjects and are consistent with each other.

a credit bureau, that would not imply that a covered entity is prohibited from disclosing a phone number to its debt collector.

Finally, Mitchem argues that ICS violated the minimum necessary standard because it used a predictive dialer to call Mitchem and the Class members. Mitchem complains that dialer campaigns are not essential to collect debts. ICS's decision to call debtors using a predictive dialer instead of having collection agents manually dial their numbers has no connection to whether the minimum necessary rule prohibits creditors from disclosing a debtor's phone number to a debt collector. ICS's use of a predictive dialer does not implicate HIPAA's minimum necessary standard.

In summary, the disclosure of a phone number to a debt collector is reasonably necessary to collect a medical debt. Debt collection is an authorized basis for disclosure of information under HIPAA. Common sense and the affidavit of Randall Gelb show that a debtor's phone number is necessary, convenient, and useful to the collection of debts. Nothing in HIPAA prohibits health care providers from releasing patient phone numbers to debt collectors as part of their payment operations. Therefore, even if a phone number were PHI, and even if HIPAA affected whether a debtor has consented to receive automated collection calls for purposes of the TCPA, a debtor's provision of his phone number to a medical creditor would constitute consent for purposes of the TCPA. Because ICS called Mitchem and the Class members at the numbers they provided to their creditors, the calls complied with the TCPA, and summary judgment should be entered in ICS's favor.

### D. ICS's calls were permissible under a reasonable interpretation of the TCPA, and the calls therefore cannot constitute willful violations of the statute.

ICS could not have committed a willful violation of the TCPA because its interpretation of the TCPA was reasonable. In *Safeco Insurance Co. of America v. Burr,* 551 U.S. 47 (2007),

13

the Supreme Court held that a defendant whose interpretation of a statute is objectively reasonable although incorrect cannot have committed a "knowing or reckless" violation of the statute. *Id.* at 70 n. 20. An interpretation is objectively reasonable when it "has a foundation in the statutory text" and it is not inconsistent with authoritative interpretations of the statute. *Id.* at 69-70.

ICS reasonably believed that the TCPA allowed it to use automated dialing equipment to call a debtor's cell phone as long as the debtor had released his phone number to the creditor. (*See* ICS's Response to Plaintiff's Counterstatement of Facts, ¶¶ 23, 27). This belief is consistent with the plain language of the FCC orders and with the TCPA. No judicial decision or agency ruling has found that auto-dialed calls made to a phone number that the debtor voluntarily released to his creditor violated the TCPA. In fact, the FCC declared that such calls are lawful in its 1992 and 2008 orders. Moreover, although no HIPAA claim has been asserted, ICS did not willfully violate that statute. ICS has a variety of procedures designed to ensure that it complies with HIPAA. (ICS's Statement of Additional Facts, ¶¶ 1-4). Given these facts, ICS's calls to Plaintiff and the Class members could not, as a matter of law, constitute willful violations of the TCPA, even if *arguendo* Mitchem could establish a statutory violation.

### IV. CONCLUSION

For all the above reasons, Defendant, ILLINOIS COLLECTION SERVICE, INC., respectfully requests that this Honorable Court enter summary judgment on the TCPA claim in favor of defendant, and against Mitchem and the members of the Class that was certified in the Court's order of January 3, 2011.

130069682v2 0907481 07791

| | |
|---|---|
| David M. Schultz | Respectfully submitted |
| Peter E. Pederson | |
| Avanti Bakane | ILLINOIS COLLECTION SERVICE, INC. |
| HINSHAW & CULBERTSON LLP | |
| 222 N. LaSalle Street, Suite 300 | |
| Chicago, Illinois 60601 | By:   /s/ Peter E. Pederson |
| (312) 704-3000 | One of its Attorneys |
| Fax: (312) 704-3001 | |

### **CERTIFICATE OF SERVICE**

      The undersigned attorney certifies that on March 8, 2011, he served this document by filing it with the Court's CM/ECF system, which will make copies of the documents available to all counsel of record.

                                                  /s/ Peter E. Pederson

### **Service List**

Curtis C. Warner, Esq. <cwarner@warnerlawllc.com>
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, IL 60601

130069682v2 0907481 07791